UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CAROLYN GENEVA LEWIS,

     Plaintiff,

     v.

NANCY A. BERRYHILL
(PREVIOUSLY CAROLYN W.
COLVIN),
Acting Commissioner of Social
Security,[1]

     Defendant.

No.  1:16-CV-3108-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 15 & 16. Plaintiff Carolyn Geneva Lewis brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits and Supplemental

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

Security Income under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Plaintiff Lewis's Motion for Summary Judgment and **REMANDS FOR FURTHER PROCEEDINGS** consistent with this Order.

## I.    Jurisdiction

Ms. Lewis filed her applications for disability and disability insurance benefits on April 14, 2013. AR 195-98.  Her alleged onset date is October 1, 2011. AR 199. Her application was initially denied on July 8, 2013, AR 142-48, and on reconsideration on September 25, 2013, AR 151-55.

Administrative Law Judge ("ALJ") Laura Valente held a hearing on July 29, 2014. AR 38-83. On October 17, 2014, the ALJ issued a decision finding Ms. Lewis ineligible for disability benefits. AR 19-32. The Appeals Council denied Ms. Lewis's request for review on April 8, 2016, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Lewis timely filed the present action challenging the denial of benefits on May 16, 2016. ECF No. 3. Accordingly, Ms. Lewis's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

//

//

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f)

& 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

//

//

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Ms. Lewis was born in 1976, has at least a high school education, and is able to communicate in English. AR 31. She has previous work experience as a cashier, agricultural produce sorter, farm worker, and telemarketer. AR 25.

Ms. Lewis has multiple mental impairments, as well as a history of substance abuse. ECF No. 15 at 1-2, AR 42-43, 301-02. Ms. Lewis has not used methamphetamine since roughly 2001. AR 302.

Ms. Lewis reports a very difficult childhood involving physical and sexual abuse that extended into her adult life. AR 301, ECF No. 15 at 1-2. She dropped out of school in eighth grade, but did obtain her GED. *Id.* Additionally, she enlisted in the military at age 17, but she was discharged under mental health guidelines due to a diagnosis of Borderline Personality Disorder. AR 42, 59, 301. Ms. Lewis also has diagnoses of diabetes mellitus and hepatitis C. AR 301.

## V. The ALJ's Findings

The ALJ determined that Ms. Lewis was not under a disability within the meaning of the Act from October 1, 2011, through the date of the decision. AR 32.

At **step one**, the ALJ found that Ms. Lewis had not engaged in substantial gainful activity since October 1, 2011, her alleged onset date (citing 20 C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.). AR 21.

At **step two**, the ALJ found Ms. Lewis had the following severe impairments: personality disorder, anxiety disorder, affective disorder, and substance abuse disorder (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 21-22.

At **step three**, the ALJ found that Ms. Lewis did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 22-24.

At **step four**, the ALJ found Ms. Lewis had the following residual functional capacity: She can perform a full range of work at all exertional levels, but with the following nonexertional limitations: she can perform simple repetitive tasks; she can maintain attention and concentration for two-hour increments with the usual and customary breaks throughout an eight-hour workday; she can work in the same room with an unlimited number of co-workers, but not in coordination with them; she can interact superficially with co-workers, meaning she can engaged in small talk with them; she can work superficially and occasionally with the general public, meaning she can refer the public to others to respond to their demands or requests, but she does not have to resolve them; she can tolerate workplace

changes as would be required for simple, repetitive tasks; she can set workplace

goals consistent with simple, repetitive work. With these restrictions, she would

not be a distraction to her co-workers or the public.  AR 24-30.

The ALJ determined that Ms. Lewis could perform her past relevant work as

a cashier and agricultural sorter. AR 30.

Although the ALJ found Ms. Lewis could perform some of her past relevant

work, at **step five**, the ALJ found that in light of her age, education, work

experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that Ms. Lewis can perform. AR 30-32. At all

exertional levels, these include industrial cleaner, kitchen helper, and laundry

worker. AR 31. If limited only to light work, these include housekeeping and

packing line worker. *Id.* The ALJ consulted a vocational expert and the Dictionary

of Occupational Titles in making this determination. *Id.*

## VI.    Issues for Review

Ms. Lewis argues that the Commissioner's decision is not free of legal error

and not supported by substantial evidence. Specifically, she argues the ALJ erred

by: (1) ignoring Washington State's finding of disability; (2) improperly weighing

the medical evidence, specifically the opinion of Dr. Aaron Burdge, PhD; and (3)

erroneously rejecting Ms. Lewis's testimony as not credible. ECF No. 15 at 6-7.

*//*

## VII. Discussion

### A. The ALJ did not err with regard to the Washington State determination of disability.

Dr. Daniel M. Neims, PsyD, reviewed Ms. Lewis's case for the state of Washington on April 7, 2013. AR 409. Dr. Neims opined that the assertions of Dr. Aaron Burdge, PhD, were consistent with the medical evidence. *Id.* Dr. Neims concluded that Ms. Lewis was disabled by the state's criteria. AR 29, 409. Ms. Lewis asserts that the ALJ failed to consider the state's determination of disability and that this is reversible error. ECF No. 15 at 7-10.

An ALJ is not bound by a state agency determination of disability; rather the ALJ will consider the determination and afford as much or little weight as he or she deems necessary, as with other medical evidence in the record. *Wilson v. Heckler*, 761 F.2d 1383, 1385 (9th Cir. 1985). The ALJ did just that in this case. The ALJ specifically stated that no weight was given to Dr. Reims's review of the medical evidence and provided multiple reasons for attaching no weight to the opinion. AR 29. The Court finds no error.

### B. The ALJ did not properly evaluate some of the medical evidence.

#### 1. Legal Standard.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating

providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

//

### 2. The ALJ did not properly evaluate Dr. Burdge's opinion.

Ms. Lewis asserts that it was error for the ALJ to reject the opinion of Dr. Burdge. ECF No. 15 at 11. For the reasons discussed below, the Court agrees.

The ALJ did afford some weight to Dr. Burdge's evaluation, but he gave little weight to his resulting opinion. AR 28. The ALJ asserted that Dr. Burdge's opinion is inconsistent with the examination findings and the record as a whole. *Id.*

As the ALJ explained, Dr. Burdge's conclusion that Ms. Lewis would be unable to maintain a schedule is contradicted by her activities of daily living, specifically her ability to attend group therapy and other appointments. An ALJ may reject an opinion that is contradicted by a claimant's activities of daily living. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). While Ms. Lewis disagrees with the ALJ's interpretation of the record, the Court will not disturb the ALJ's rationale interpretation. *Molina*, 674 F.3d at 1111. However, significant errors otherwise prevent the Court from upholding the ALJ's decision.

The ALJ improperly disregarded Dr. Burdge's mental status examination findings. To support the conclusion, the ALJ cited to a "mostly normal" mental status examination. AR 29. This is an incorrect depiction of the mental state examination findings. While there are some normal aspects to the mental status examination (normal tone, rate, comprehension of speech; normal motor activity; cooperation; organized and sensible thought; average intelligence), Dr. Burdge

described Ms. Lewis's mood as "dysphoric, irritable, and anxious" and her affect was "congruent and tearful at times." AR 395. He also found Ms. Lewis's memory and concentration outside of normal limits, despite finding that "she appeared to put forth adequate effort during the interview process." *Id.* These findings on the mental status examination cannot reasonably be described as "mostly normal." *See Regenitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (observations of "tearful and sad" and "blunted affect" do not comprise a "benign mental status exam").

A doctor's clinical observations are significant in forming medical opinions. The ALJ ignored significant pieces of this very important clinical observation and mischaracterized the findings. Remand is appropriate to consider Dr. Burdge's opinion in its entirety, including the mental status examination.

**C. The ALJ did not properly evaluate Ms. Lewis's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject

the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

### a. Varying mental status examinations.

First, the ALJ discussed the examinations performed by Dr. Burdge and Dr. Mary Pellicer, MD. Again, the ALJ cites to the normal findings within the examination while ignoring the abnormal ones, and as discussed above, the ALJ erred by disregarding Dr. Burdge's mental status examination findings. *See supra* at 10-13; AR 391-96. The mental status examination performed by Dr. Pellicer on June 18, 2013, indicated that Ms. Lewis had normal and appropriate mood and affect, she was alert, and her memory appeared intact, AR 326; however, Dr. Pellicer later contradicted this by stating under "Clinical Impressions" that Ms. Lewis has "memory problems of unclear etiology." AR 328. Additionally, it appears that Dr. Pellicer's purpose for examining Ms. Lewis was primarily to evaluate her physical condition. AR 326-28. These findings on Ms. Lewis's mental condition are both limited and internally contradicted. AR 326-28. This cannot rise to the level of a specific, clear, and convincing reason for rejecting Ms. Lewis's subjective testimony.

Next, the ALJ referred to a Disability Report dated September 5, 2013,[2] in which Ms. Lewis reported that she had not slept for a week and had been off her

---

[2] The ALJ states that this was from May 2013, but the record is dated September.

medications for two weeks. AR 26, 252. The ALJ logically noted that this was an

indication that her condition worsens while not on medication; however, with no

evidence to support the finding, the ALJ then opined that "the more likely scenario

is that the claimant does not consistently take her medications because her

symptoms are not as severe as she maintains." AR 26. A claimant's statements

may be less credible when treatment is inconsistent with the level of complaints or

a claimant is not following treatment prescribed without good reason. *Molina*, 674

F.3d at 1114. When refusing prescribed treatment, the reasons presented for not

following the treatment must be related to the mental impairment and not a matter

of personal preference. *Id.* Ms. Lewis stated on the report that she "missed an

appointment and have been off [her] meds for 2 weeks." AR 252.  Dr. Burdge

indicated that Ms. Lewis has severe struggles keeping appointments, AR 391-96,

and her failure to take medication stemmed from a missed appointment. Thus, in

this case, the record indicates that Ms. Lewis's failure to adhere to her medication

was the result of a mental impairment and will not be credited against Ms. Lewis.

      Other mental status examinations contained in the record both support the

ALJ's findings and contradict it, establishing a pattern of waxing and waning

mental health. For instance, on June 26, 2013, Ms. Lewis met with Debbi Spitler,

PA-C, who observed Ms. Lewis to be "alert, oriented, and cooperative," her mood

to be stable, and her affect to be "pleasant, appropriate, and full ranging." AR 357.

To the contrary, less than two weeks later, on July 10, 2013, Ms. Lewis presented to the Yakima Valley Memorial Hospital emergency room and was described as having "rapid speech consistent with bipolar manic." AR 339. In January 2014, her mental status examination found her affect "full range" and mood to be "euthymic," however the clinician noted that a formalized mental status was not completed because Ms. Lewis appeared to have memory and concentration problems. AR 413.

The findings of the January 2014 visit indicated that Ms. Lewis was "meeting medical necessity with the diagnosis of Bipolar 1 Disorder and PTSD." AR 414. Ms. Lewis argues that a natural effect of bipolar disorder is a fluctuation of moods that would explain these various mental status examination findings. ECF No. 15 at 11-13. However, examining mental health professional Dr. Burdge found that Ms. Lewis did not make the criteria for bipolar disorder, AR 392, but he did find mood instability related to her personality disorder, which would also account for the general fluctuations observed throughout her treatment history. It is error to reject Ms. Lewis's testimony because her symptoms appear to wax and wane, especially in light of the copious reports of mood instability in her medical record. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

//

//

## b. Activities of daily living.

The ALJ also relied on Ms. Lewis's daily activities to determine she was less impaired than she alleged. AR 27. In the briefing before the Court, Ms. Lewis does not challenge the findings regarding physical limitations, but rather mental limitations. While the record demonstrates that she participated in solitary activities such as sewing, video games, and using the Internet, these are not contrary to the allegations that she has severe mental impairments that limits her ability to tolerate others or adhere to a schedule. Moreover, these limitations were supported by Dr. Burdge's findings. AR 394-95.

## c. Inconsistent statements.

Finally, the ALJ relied on minor inconsistencies in Ms. Lewis's statements regarding her work history and substance abuse undermined her credibility. Upon careful review of the record, the Court finds error in the ALJ's assessment.

Ms. Lewis's statements about her work history are more often than not fairly consistent. On April 26, 2013, Ms. Lewis stated that she stopped working in October 2011 due to her conditions, which is similar to the information provided to Dr. Pellicer in June 2013, in which she stated she last worked as a fruit sorter two years prior and left because of stress and anxiety. AR 222, 325. She also told PA-C Spitler on June 26, 2013, that she had last worked two years prior, which would be 2011. AR 356. At this visit, Ms. Lewis also told PA-C Spitler that she had found a

job the prior week as an animal caretaker, which the ALJ noted was contrary to the statement provided to Dr. Pellicer "eight days before." AR 27, 356. This is not necessarily true, as the evidence shows that the position was obtained within the week prior to the visit, which could have been after Ms. Lewis's visit with Dr. Pellicer eight days prior.

There is, however, at least one verifiable inconsistency. In March 2013, Ms. Lewis told Dr. Burdge she lost her last job in the prior winter due to a lack of transportation. AR 392. This single incident alone, when viewed alongside the entire record, does not constitute a specific, clear, and convincing for entirely rejecting Ms. Lewis's testimony.

Likewise, Ms. Lewis's statements regarding her substance abuse are insufficient to reach the high bar of specific, clear, and convincing reasons for rejection of Ms. Lewis's credibility. The ALJ relied on the fact that Ms. Lewis was unable to provide an exact date that she quit methamphetamine use. AR 27. Ms. Lewis provided three different sobriety dates to her various providers: twelve years to Dr. Burdge, fifteen years to Dr. Pellicer, and sixteen years to the Yakima Valley Hospital emergency room. AR 302, 326, 337. These dates are not sufficiently diverse as to demonstrate a lack of credibility, particularly in light of the established memory problems in Ms. Lewis's records.

Despite statements that she had been clean and sober for somewhere between twelve and sixteen years, Ms. Lewis tested positive for marijuana on at least one occasion. AR 333. She also admitted to smoking marijuana over the 2013 winter holidays. AR 468. A review of Ms. Lewis's testimony at her hearing demonstrates that she appears to separate her sobriety from methamphetamine from that of marijuana or alcohol. AR 58. She testified that she last used methamphetamine "over fourteen years ago," which is generally consistent with the statements given to the other providers of her clean and sober date. AR 58, 302, 326, 337. She then elaborated that she socially drinks "once in a blue moon" and has used marijuana a couple of times recreationally since it was legalized in Washington State. AR 58. Ms. Lewis's testimony indicates that she clearly views her former methamphetamine abuse quite differently from her alcohol and marijuana use, and when viewed in its entirety, her statements regarding her substance use are not inconsistent or indicative of unreliability.

Upon review of the record and the ALJ's findings, the Court finds that the ALJ did not properly assess Ms. Lewis's credibility regarding her subjective symptom testimony. Remand is appropriate.

**D. Remedy.**

The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th

Cir.1996).The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are necessary for a proper determination to be made.

On remand, the ALJ shall re-evaluate the medical opinion of Dr. Burdge, paying particular attention to his objective clinical findings and test results. Additionally, the ALJ shall re-evaluate Ms. Lewis's subjective symptom testimony, taking into consideration the totality of the record and if relying on isolated incidents, thoroughly explaining the rationale with specific, clear, and convincing reasons.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED.**

    2.  Defendant's Motion for Summary Judgment, **ECF No. 16,** is **DENIED.**

    3.  The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

///

///

4. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 10th day of May, 2017.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge